UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| YERONDIN THOMAS and KATHERINE THOMAS,<br><br>          Plaintiffs,<br><br>     v.<br><br>CITY OF VINELAND; DETECTIVE GAMALIEL "GAMI" CRUZ; POLICE CHIEF TIMOTHY CODISPOTI; DETECTIVE ANTONIO RAMOS, JR.; SARGEANT PAUL SHADINGER; OFFICER GARY MOLLIK; OFFICER WILLIAM BONTCUE IV; OFFICER JOSEPH MONTANA, JR.; JOHN DOES 1-10; and JANE DOES 1-10,<br><br>          Defendants. | HONORABLE JOSEPH E. IRENAS<br><br>CIVIL ACTION NO. 12-6936<br>(JEI/JS)<br><br>**OPINION** |

**APPEARANCES:**

BEGELMAN ORLOW & MELLETZ
By:  Paul R. Melletz, Esq.
411 Route 70 East, Suite 245
Cherry Hill, New Jersey, 08034
     Former Counsel for Plaintiffs

BARRETT AND PAVLUK, LLC
By:  Judson B. Barret, Esq.
1200 Eagle Avenue, Suite 204
Ocean, New Jersey 07712
     Counsel for Defendants City of Vineland & Police Chief
     Timothy Codispoti

THE MACMAIN LAW GROUP, LLC
By:  Brian H. Leinhauser, Esq.
     Charles R. Starnes, Esq.
101 Lindenwood Drive, Suite 160
Malvern, PA 19355
     Counsel for Defendants Gamaliel "Gami" Cruz, Antonio Ramos,
     Jr., Paul Shadinger, Gary Mollik, William Bontcue IV, and
     Joseph Montana, Jr.

1

**IRENAS**, Senior District Judge:

Plaintiffs Yerondin and Katherine Thomas brought this civil rights action against the City of Vineland, Vineland's Police Chief, and individual police officers based on the allegedly malicious prosecutions of Plaintiffs.

Currently pending before the Court are three separate motions for summary judgment filed by Defendants.[1]  In addition, Defendants Gamaliel Cruz, Antonio Ramos, Paul Shadinger, Gary Mollik, William Bontcue IV, and Joseph Montana ("Officer Defendants") have moved for sanctions under Rule 11 against Plaintiffs and Plaintiffs' counsel, Paul Melletz, Esq. of Begelman Orlow & Melletz.

For the reasons explained herein, Defendants' motions for summary judgment will be **GRANTED**.  The motion for sanctions will be **DENIED**.

## I.   FACTS

The Court recites those facts relevant to the pending motions.

---

[1] The City of Vineland and Police Chief Codispoti ("Municipal Defendants") filed motions against Mr. and Mrs. Thomas separately.  (Docket Nos. 54 & 56)  The individual named police officers filed one motion against both Plaintiffs.  (Docket No. 55)

On October 30, 2009, following two controlled purchases of cocaine from Yerondin Thomas through a "very reliable" confidential informant ("CI #69"), Defendants Cruz, Shadinger, and Ramos, detectives in the Vineland Police Department, obtained a search warrant for Plaintiffs' shared residence in Vineland, New Jersey, and for Plaintiffs' vehicle.  (Search Warrant Aff., Ex. 3 to Officer Defs.' Motion)  According to the search warrant affidavit, CI #69 had told Defendant Cruz that Mr. Thomas possibly stored drugs in his garage as well.  (Id.)  CI #69 also related that "supposedly [Mr. Thomas's] wife has no idea what he does and [he] does not want her to accidently stumble into any drugs inside the house."  (Id.)

That same day, Defendants Cruz and Bontcue arrested Mr. Thomas at a traffic stop.  Defendant Cruz states that, incident to the arrest, he found bags of what he suspected were marijuana and cocaine in Mr. Thomas's coat pocket.  Mr. Thomas was then transported back to police headquarters.[2]

Following Mr. Thomas's arrest, Defendants Shadinger, Mollik, Ramos, Bontcue, and Montana executed the search warrant on Plaintiffs' shared residence.  (Cruz Rpt. at 1, Ex. 4 to Officer Defs.' Motion)  Shadinger's police report states that the officers knocked and announced their presence, and that

---

[2] The Complaint does not challenge the constitutionality of the search warrant or Mr. Thomas's arrest.

Katherine Thomas opened the door.  (Shadinger Rpt. at 1, Ex. 6
to Officer Defs.' Motion)  Shadinger claims he smelled marijuana
immediately.  (Id.)  Following the search, the officers arrested
Ms. Thomas and transported her to police headquarters.  (Cruz
Rpt. at 1)

Ms. Thomas does not dispute that the officers found the
following, among other items, in her home: $2,197 in cash, used
marijuana cigarettes, an Altoid mint box containing white pills,
a wireless driveway alert system, Katherine's Unemployment
statement, a box of various chemicals and a bag of soil, two
large hanging lamps, odor eliminators, three ballast light
systems, two air filtration systems, a plastic tub filled with
water lines and two heat lamps, a cooling system with fan and
aluminum conduit, a box containing large heat bulbs and numerous
chemicals, a digital camera, a computer's internet browser open
to a website that sold marijuana seeds, a bag of marijuana plant
stems, two ziplock bags containing marijuana, two small bags
containing marijuana, a bag containing white powder, a glass
container filled with marijuana seeds, two trash bags of
marijuana, a BB rifle, and an air rifle.  (Defs.' Statement of
Facts ("D.S.F.") ¶ 31; Pl.'s Responsive Statement of Facts
("P.R.S.F.") ¶ 31)

According to the police's Evidence Log, the officers found
the chemicals, lamps and lighting systems, air filtration

4

systems, cooling systems, and most of the marijuana in the basement.  (Evidence Log, Ex. 5 to Officer Defs.' Motion)  The door to the basement had been padlocked, and Ms. Thomas claimed not to have the key, but the officers were able to open the lock using a set of keys obtained from Mr. Thomas during his prior arrest.  (Shadinger Rpt. at 1)  The photographs the police took of these items while searching the home indicate that the lights, filtration system, and cooling system were not installed at the time.  (Pictures of Evidence, Ex. 7 to Officer Defs.' Motion)

Ms. Thomas does not dispute that the officers found marijuana plants growing in Plaintiffs' yard as well.  (P.R.S.F. ¶ 36)  In her opposition papers, Ms. Thomas also admits that the officers found books on growing marijuana and marijuana seeds in Plaintiffs' bedroom.  (P.R.S.F. ¶¶ 33, 35)  During his deposition, Mr. Thomas admitted to having a digital scale in the home.[3]  (Y. Thomas Dep. 88:4-6, Ex. 1 to Officer Defs.' Motion)

Defendants claim the officers also found many other containers of marijuana seeds and more marijuana plants, though Ms. Thomas seems to deny that such items were in the house.  The parties dispute the total weight of the marijuana found in the

---

[3] Both Plaintiffs denied the presence of a digital scale in their opposition to Defendants' first motion for sanctions, submitted prior to Mr. Thomas's deposition.  In her opposition to the instant motion, Ms. Thomas seems to continue to deny the presence of a scale in the home.

residence.  Defendants state that the officers seized approximately 10 plants, or 8.5 pounds of marijuana.  (D.S.F. ¶ 10)  In her opposition, Ms. Thomas claims that the officers found no more than one pound of marijuana.  (P.R.S.F. ¶ 10)

Detective Cruz interviewed both Plaintiffs at police headquarters following their arrests.  (Initial Interview Videos, Exs. 11 & 12 to Officer Defs.' Motion)  Ms. Thomas concedes that, before asking to speak with an attorney, she stated that she smelled marijuana in the home.  (Id. at ¶ 13)  She was then processed and charged with maintaining a marijuana production facility, possession of a controlled dangerous substance (CDS), possession with the intent to distribute, and possession with intent to distribute within a school zone.  (K. Thomas Complaint-Warrant, Ex. 21 to Officer Defs.' motion)  Mr. Thomas asked to speak with an attorney before answering any questions.  He was charged with the same offenses as his wife, along with possession of cocaine, possession of cocaine with intent to distribute, and possession of drug paraphernalia to manufacture marijuana.  (Y. Thomas Complaint-Warrant)[4]

Later that day, apparently after finding out that his wife had been arrested and charged, Mr. Thomas decided to take

---

[4] Counsel for Officer Defendants submitted a copy of Mr. Thomas's Complaint-Warrant to the Court following the Court's request for such documentation during oral argument on the motions for summary judgment.

responsibility for the marijuana present in the residence.  (Y.
Thomas Confession Video, Ex. 15 to Officer Defs.' Motion)
During a taped confession, he stated that the marijuana in the
house belonged to him, not his wife.  (Id.)  In terms of the
amount of marijuana, Mr. Thomas admitted that there were three
plants growing in the back yard, which his wife did not access,
and "about seven" plants drying in his basement.[5]  (Id.)  He said
that his wife had no idea what was going on in the basement and
did not know about the plants in the yard, which were not
readily visible from the home.  (Id.)  Although he claimed
responsibility for the marijuana, Mr. Thomas continued to deny
that he was manufacturing marijuana in the residence.  (Id.)

     Based on Defendant Cruz's misrepresentation in court
regarding a confidential informant in an unrelated case, the
Cumberland County Prosecutor declined to prosecute a number of
cases in which Cruz was involved as an investigating officer.
This body of cases included the criminal actions pending against
Plaintiffs, whose charges were dismissed with prejudice.
Plaintiffs then filed the instant lawsuit in November 2012
alleging malicious prosecution.

---

[5] Although Defendants state that "Plaintiff has admitted there were 3880 grams
of marijuana (approximately 8.5 pounds) in her home," (Officer Defs.' Motion
at 13), the Court cannot find any point where either Plaintiff conceded that
such a quantity was present in the home.  In his confession, Mr. Thomas spoke
in terms of plants only.

In their Complaint, Plaintiffs alleged that Vineland police officers had planted evidence in their home and lacked probable cause to bring the relevant charges.  Pointing to Mr. Thomas's confession tape and the police reports, Officer Defendants filed an initial motion for sanctions on December 13, 2013, claiming that Plaintiffs' malicious prosecution claims based on allegedly falsified evidence were frivolous.  In their opposition papers, Plaintiffs conceded that certain items were present, but denied the presence of other evidence the police claimed to have found.[6] (Pls.' Opp. to First Motion for Sanctions, Docket No. 28) Acknowledging that discovery was ongoing and that the merits of the case were intertwined with the sanctions motion, the Court dismissed the motion without prejudice.  (Apr. 17, 2014, Order Denying First Motion for Sanctions, Docket No. 39)

On March 4, 2014, prior to the Court's order on the initial sanctions motion, Mr. Melletz filed a motion to withdraw as counsel for Mr. Thomas only.  (Docket No. 33)  The Court granted the motion on May 29, 2014, and Mr. Thomas has since proceeded

---

[6] Plaintiffs disputed that the officers found the following: six .22 bullets, three vials containing marijuana seeds, a marijuana grinder, books on growing marijuana, a large ziplock bag of marijuana, a small plastic container of marijuana seeds, a moneygram and a website printout for an order of marijuana seeds, a digital scale, EBT cards, marijuana-related literature and videos, a coffee canister of marijuana seeds, one trashbag containing 14 marijuana plants, and a sawed-off BB rifle.  (D.S.F. ¶ 31)  Mr. Thomas later admitted to the books and digital scale.

pro se. (Docket No. 49)  Mr. Melletz continues to represent Ms. Thomas in this matter.

Defendants filed the instant motions for summary judgment on January 9, 2015.  Officer Defendants also moved for sanctions pursuant to Rule 11.  Mr. Thomas has not submitted any opposition to Defendants' motions.  Ms. Thomas, through her attorney Mr. Melletz, filed her own opposition to Officer Defendants' motions for summary judgment and sanctions, and to the City of Vineland and Police Chief Codispoti's ("Municipal Defendants") motion for summary judgment.

The Court held oral argument on the instant motions on August 6, 2015.  Mr. Thomas did not appear.  During oral argument, counsel for Ms. Thomas conceded that the Officer Defendants did not plant any evidence in Plaintiffs' residence.

## II.  Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted if "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In deciding a motion for summary judgment, the court must construe all facts and

inferences in the light most favorable to the nonmoving party.
*See Boyle v. Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998).
The moving party bears the burden of establishing that no
genuine issue of material fact remains. *See Celotex Corp. v.
Catrett*, 477 U.S. 317, 322-23 (1986).  A fact is material only
if it will affect the outcome of a lawsuit under the applicable
law, and a dispute of a material fact is genuine if the evidence
is such that a reasonable fact finder could return a verdict for
the nonmoving party.  *See Anderson*, 477 U.S. at 252.

The nonmoving party must present "more than a scintilla of
evidence showing that there is a genuine issue for trial."
*Woloszyn v. Cnty. of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005).
"If the evidence is merely colorable . . . or is not
significantly probative . . . summary judgment may be granted."
*Anderson*, 477 U.S. at 249-50 (internal citations omitted).  The
court's role in deciding the merits of a summary judgment motion
is to determine whether there is a genuine issue for trial, not
to determine the credibility of the evidence or the truth of the
matter.  *Id.* at 249.


### III. Analysis

The Court will first address Defendants' motions for
summary judgment on Plaintiffs' claims before turning to the
Rule 11 motion for sanctions.

10

## A. Plaintiffs' Claims

### 1. Malicious Prosecution

Counts I-IV of the Complaint assert malicious prosecution claims on behalf of both Plaintiffs against Officer Defendants under § 1983 and New Jersey State law.  Plaintiffs allege that Defendant Cruz filed false and malicious charges against them without probable cause, that Detective Cruz fabricated evidence relied upon by county prosecutors, and that the remaining Officer Defendants knew the charges were false but failed to disclose that fact.  (Compl. ¶¶ 31-34, 41-44)

The Third Circuit requires a plaintiff to prove the following in order to prevail in a § 1983 malicious prosecution action:

> (1) the defendants initiated a criminal proceeding;
> (2) the criminal proceeding ended in the plaintiff's favor;
> (3) the proceeding was initiated without probable cause;
> (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and
> (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*McKenna v. City of Phila.*, 582 F.3d 447, 461 (3d Cir. 2009). The standard for malicious prosecution under New Jersey State law mirrors these elements, excepting the fifth requirement. See *Epperson v. Wal-Mart Stores, Inc.,* 373 N.J. Super. 522, 530 (App. Div. 2004).  Here, the relevant question is whether, viewing the facts in a light most favorable to Plaintiffs, a

11

reasonable jury could find that Officer Defendants lacked probable cause to charge Plaintiffs.

"Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Wilson v. Russo,* 212 F.3d 781, 789 (3d Cir. 2000).[7]  To determine whether an officer had probable cause, courts "examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003).  "The probable cause inquiry looks to the totality of the circumstances; the standard does not require that officers correctly resolve conflicting evidence or that their determinations of credibility, were, in retrospect, accurate." *Wright v. City of Phila.*, 409 F.3d 595, 603 (3d Cir. 2005).

In the context of malicious prosecution claims, courts must examine each offense charged for probable cause.  *See Johnson v. Knorr*, 477 F.3d 75, 85 (3d Cir. 2007) ("[A] defendant initiating criminal proceedings on multiple charges is not necessarily

---

[7] Similarly, New Jersey courts have defined probable cause as "facts such as to lead a person of ordinary prudence to believe on reasonable grounds the truth of the charge at the time it was made." *Brunson v. Affinity Fed. Credit,* 199 N.J. 381, 398 (2009).

insulated in a malicious prosecution case merely because the prosecution of one of the charges is justified.").

Since both Plaintiffs were charged the day of their arrests, the probable cause inquiry focuses on what Defendant Officers found in Plaintiffs' home and whether those items, along with other known evidence, supported the relevant charges.

### a. Katherine Thomas

Katherine Thomas faced charges for violations of N.J.S.A. 2C:35-4 (maintaining or operating a CDS production facility), N.J.S.A. 2C:35-5b(10)(b) (manufacturing, distributing or dispensing), N.J.S.A. 2C:35-7 (distributing, dispensing or possessing CDS or substance analog on or within 1,000 feet of school property), and N.J.S.A.2C:35-10a(3) (possession, use or being under the influence, or failure to make lawful disposition).  Officer Defendants argue that they had clear probable cause to bring each of these charges.  The Court agrees.

The relevant statutes state as follows:

Under N.J.S.A. 2C:35-4,

[A]ny person who knowingly maintains or operates any premises, place or facility used for the manufacture of . . . marijuana in an amount greater than five pounds or ten plants . . . or any person who knowingly aids, promotes, finances or otherwise participates in the maintenance or operations of such premises, place or facility, is guilty of a crime of the first degree.

N.J.S.A. 2C:35-5b(10)(b), under which Ms. Thomas was
charged with two counts, provides,

> a. Except as authorized by P.L.1970, c.226 (C.24:21-1 et
> seq.), it shall be unlawful for any person knowingly or
> purposely:
> (1) To manufacture, distribute or dispense, or to
> possess or have under his control with intent to
> manufacture, distribute or dispense, a controlled
> dangerous substance or controlled substance analog; or
> (2) To create, distribute, or possess or have under his
> control with intent to distribute, a counterfeit
> controlled                dangerous                substance.
> b. Any person who violates subsection a. with respect
> to:
> ...
> (10)(b) Marijuana in a quantity of five pounds or more
> but less than 25 pounds including any adulterants or
> dilutants, or 10 or more but fewer than 50 marijuana
> plants, regardless of weight, or hashish in a quantity
> of one pound or more but less than five pounds, including
> any adulterants and dilutants, is guilty of a crime of
> the second degree.

Ms. Thomas faced one count under this statute for manufacturing
and one count for possession with intent to distribute.

> N.J.S.A. 2C:35-7 states,

> 1. a. Any person who violates subsection a. of
> N.J.S.2C:35-5 by distributing, dispensing or possessing
> with intent to distribute a controlled dangerous
> substance or controlled substance analog while on any
> school property used for school purposes which is owned
> by or leased to any elementary or secondary school or
> school board, or within 1,000 feet of such school
> property or a school bus, or while on any school bus, is
> guilty of a crime of the third degree . . .

Finally, N.J.S.A. 2C:35-10a(3) provides,

> a. It is unlawful for any person, knowingly or purposely,
> to obtain, or to possess, actually or constructively, a
> controlled dangerous substance or controlled substance
> analog, unless the substance was obtained directly, or

14

pursuant to a valid prescription or order form from a practitioner, while acting in the course of his professional practice, or except as otherwise authorized by P.L.1970, c.226 (C.24:21-1 et seq.). Any person who violates this section with respect to:

. . .

(3) Possession of more than 50 grams of marijuana, including any adulterants or dilutants, or more than five grams of hashish is guilty of a crime of the fourth degree, except that, notwithstanding the provisions of subsection b. of N.J.S.2C:43-3, a fine of up to $25,000.00 may be imposed;

As stated above, Ms. Thomas no longer contends that Officer Defendants planted evidence in her home.  Mr. Thomas admitted during his confession that there were three plants growing in the back yard and around seven plants drying in the basement. The basement also contained marijuana manufacturing equipment, albeit not installed at the time.  In addition, there were numerous other bags of marijuana, containers of marijuana seeds, books on growing marijuana, a purchase order for marijuana seeds, and a digital scale in areas of the home outside the basement.  Ms. Thomas owned the home, which was located within 1,000 feet of a school.  She also admitted to smelling marijuana during her initial interview.

Officer Defendants argue that, if there was any doubt as to whether Ms. Thomas possessed the drugs and paraphernalia directly, they surely had probable cause to charge Ms. Thomas under the theory that she "constructively possessed" the contraband in her home.  The New Jersey Supreme Court has held

that "[a] person constructively possesses an object when,
although he lacks 'physical or manual control,' the
circumstances permit a reasonable inference that he has
knowledge of its presence, and intends and has the capacity to
exercise physical control or dominion over it during a span of
time." *State v. Spivey*, 179 N.J. 229, 236-37 (2004). "More
than one individual can be possessed of an item at the same time
with equal criminal responsibility." *State v. Brown*, 80 N.J.
587, 597 (1979). Although, "mere proximity to the drugs, mere
presence on the property where they are located, or mere
association with the person who does control the drug or the
property is insufficient alone to establish constructive
possession," *United States v. Mainor*, 393 Fed. App'x 10, 18 (3d
Cir. 2010), this Circuit has held an individual to
constructively possess any contraband located in common areas of
her own home, *see Ginter v. Skahill*, 298 Fed. App'x 161, 164-65
(3d Cir. 2008) (finding that police had probable cause to
believe defendant possessed drug paraphernalia because it was
found in a common area of a residence she co-owned and lived in
with her husband).

Officer Defendants contend that this was not a case of
"mere proximity" to drugs. Ms. Thomas owned the home. The
residence smelled of marijuana. There were marijuana plants
growing in the backyard, clearly accessible to all parties in

the home.[8]  There were numerous bags of marijuana, marijuana seeds, a purchase order for seeds, books on growing marijuana, and a digital scale in common areas outside the basement.

Ms. Thomas, without citing to any case law, contends that the officers had enough evidence to detain Ms. Thomas at the time for questioning, but not to file the relevant criminal charges.  She argues that, considering the confidential informant's statement regarding Mr. Thomas keeping his activities secret from him wife, along with the lock on the basement door, the officers should have further investigated her connection to the contraband in the home before concluding that she knew about or aided her husband's illegal activities. Pointing to an expert report submitted by Mark Weber of RED Investigative Group, Ms. Thomas asserts that the officers could have either investigated the ventilation system in the basement, interviewed Katherine about her knowledge of drugs before bringing charges,[9] or conducted a "forensic analysis" of the drugs to establish a link to Ms. Thomas.

---

[8] Ms. Thomas has tried to argue that she is disabled and could neither walk around outside or down the stairs into the basement.  Since there is nothing in the record indicating that the police knew about her alleged disability at the time they charged Ms. Thomas, this fact is irrelevant to the probable cause analysis.

[9] Plaintiffs seem to ignore that the police did interview Ms. Thomas before charging her and she admitted to smelling marijuana in the home before asking to speak to her attorney.

Not only does this argument run counter to decades of case law regarding the requirements for probable cause, it also attempts to blur the necessary distinction between the probable cause standard and the much more stringent standard required to convict.  Police officers need not undertake further investigation to validate a probable cause determination.  *See Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 790 n. 8) (3d Cir. 2000) (noting that a detective who had probable cause to arrest plaintiff based on a credible report from an eyewitness did not need to interview other witnesses, including plaintiff, to validate that probable cause existed); *Schrimer v. Penkethman*, No. 10-1444 RMB/JS, 2012 WL 6738757, at *8 (D.N.J Dec. 31, 2012) ("Once a police officer has determined that probable cause exists, he has no duty to further investigate the complainant's accusation or interview other witnesses in an effort to find exculpatory evidence absent known plainly exculpatory evidence or circumstances indicating a witness's unreliability.") (internal quotations omitted).  Based on the items found in the home, and the general smell of marijuana, Officer Defendants had overwhelming evidence that Ms. Thomas, at the very least, must have known about the marijuana in her home. The fact that she owned the home and allowed such activity to take place there gave the officers clear reason to believe she aided in the manufacture and distribution of marijuana.  The

18

lock on the basement door did not exculpate Ms. Thomas.  It is unlikely that the door to such a stash of illegal drugs would *not* be locked.  It would have been unreasonable for the officers to believe that Ms. Thomas was unaware of such a large volume of marijuana in and around the residence.

The arguments Ms. Thomas puts forward here may have succeeded at her criminal trial, where prosecutors would have had to prove her knowledge of and participation in her husband's illegal activities beyond a reasonable doubt.  But the officers did not need to make such a proof before charging Ms. Thomas.  "[P]robable cause determinations have to be made 'on the spot' under pressure and do 'not require the fine resolution of conflicting evidence that a reasonable doubt or even a preponderance standard demands.'"  *Paff v. Kaltenbach*, 204 F.3d 425, 436 (3d Cir. 2000) (quoting *Gerstein v. Pugh*, 420 U.S. 103, 121 (1975)).  Simply put, the information within Officer Defendants' knowledge at the time they charged Ms. Thomas sufficed to warrant a belief that she committed each of the relevant offenses.  The Court will therefore grant Officer Defendants' motion for summary judgment on Ms. Thomas's malicious prosecution claims.

### b. Yerondin Thomas

Mr. Thomas faced the same charges as his wife, along with the following additional charges: (1) possession of cocaine, in

violation of N.J.S.A. 2C:35-10a(1); (2) possession of cocaine with intent to distribute, in violation of N.J.S.A. 2C:35-5b(3); (3) possession of drug paraphernalia for manufacturing marijuana, in violation of N.J.S.A. 2C:36-2; and (4) possession of weapon by a convicted felon in violation of N.J.S.A. 2C:39-7A. (Y. Thomas Complaint-Warrant)

As stated on the record during oral argument, the Court will grant Officer Defendants' unopposed motion for summary judgment as to Mr. Thomas's malicious prosecution claims.[10] The undisputed amount of marijuana (over ten plants) and manufacturing equipment found in Plaintiffs' shared home, the presence of which Mr. Thomas later admitted during his taped confession, undoubtedly gave the officers probable cause to charge Mr. Thomas with each marijuana-related offense. The cocaine found on Mr. Thomas's person during the traffic stop, along with the cash and scale found in his residence, gave probable cause to charge him with the cocaine-related offenses.

---

[10] Yerondin Thomas, proceeding in this case pro se, filed no opposition to the instant motions. However, "[t]he Court must still determine, even for an unopposed summary judgment motion, whether the motion for summary judgment has been properly made and supported and whether granting summary judgment is 'appropriate.'" *Muskett v. Certegy Check Servs., Inc.*, No. 08-3975 (JBS/JS), 2010 WL 2710555, at *3 (D.N.J. July 6, 2010). Where, as here, "the moving party does not have the burden of proof on the relevant issues, . . . the district court must determine that the deficiencies in [Plaintiff's] evidence designated in or in connection with the motion entitle the [Defendants] to judgment as a matter of law." *Anchorage Assocs. v. Virgin Islands Bd. Of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990).

Finally, the air rifles found on the premises gave the officers probable cause to file the weapons charge.

## 2. Civil Rights Conspiracy

To prove a civil rights conspiracy claim, Plaintiffs must show that they suffered an actual deprivation of their constitutional rights. *See Ridgewood Bd. Of Educ. V. N.E. ex rel. M.E.*, 172 F.3d 238, 254 (3d Cir. 1999) ("In order to prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law conspired to deprive him of a federally protected right."); *Fioriglio v. City of Atlantic City*, 996 F. Supp. 379, 385 (D.N.J. 1998) ("[A] § 1983 conspiracy claim is not actionable without an actual violation of § 1983."). Since the Court will grant Officer Defendants' motion for summary judgment with regards to both Plaintiffs' malicious prosecution claims, the Court will also dismiss Plaintiffs' civil rights conspiracy claim.

## 3. Municipal Liability

In Counts VII through X of the Complaint, Plaintiffs assert § 1983 supervisory and municipal liability claims against Police Chief Timothy Codispoti and the City of Vineland ("Municipal Defendants") for policies or customs responsible for the malicious prosecution Plaintiffs allege they suffered.  (Compl. ¶¶ 17-22)  Municipal Defendants have moved for summary judgment

and neither Plaintiff has filed an opposition.  The Court will
grant Municipal Defendants summary judgment on these counts.

First, the Court notes that Plaintiffs bring their claims
against Defendant Codispoti (Counts VII and VIII) in Codispoti's
official capacity only.  (Id. at ¶ 17-19)  The Supreme Court has
opined that official capacity claims, as opposed to claims
brought against officials in their individual capacities,
"generally represent only another way of pleading an action
against an entity of which an officer is an agent." *Hafer v.
Melo*, 502 U.S. 21, 25 (1991).  Courts should therefore treat
suits against state officials in their official capacity "as
suits against the State." *Id*.  "A suit against the Chief of
Police in his official capacity is really a claim against the
police department and, in turn, the municipality." *Cordial v.
Atlantic City*, No. 1:11-cv-01457 (RMB/AMD), 2014 WL 1095584, at
*9 (D.N.J. March 19, 2014).  The Court will therefore dismiss
the claims against Defendant Codispoti as duplicative of the
claims brought against City of Vineland.

A municipality may be liable under § 1983 "when the
execution of a government's policy or custom, whether made by
its lawmakers or by those whose edicts or acts may fairly be
said to represent official policy, inflicts the injury." *Monell
v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  To succeed
on a municipal liability claim, however, a plaintiff must have

suffered some underlying violation of his constitutional rights for which the municipality is to blame.  *See Mulholland v. Gov't County of Berks, Pa.*, 706 F.3d 227, 238 n. 15 (3d Cir. 2013) ("It is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim.") (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)).  Since no reasonable jury could find an underlying constitutional violation, i.e. malicious prosecution, Plaintiffs' municipal liability claims must be dismissed.

## B. Rule 11 Sanctions

The Court will deny Officer Defendants' motion for sanctions as to both Plaintiffs and Plaintiffs' counsel, Mr. Melletz.

Rule 11 states, in pertinent part:

**(b) Representations to the Court.** By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
    **(1)**  it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
    **(2)**  the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
    **(3)**  the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable

> opportunity for further investigation or discovery;
> and
>
> **(4)** the denials of factual contentions are
> warranted on the evidence or, if specifically so
> identified, are reasonably based on belief or a
> lack of information.

Fed. R. Civ. P. 11.  If a party or its counsel violates this provision, the opposing party may move for the imposition of sanctions, which may include an order directing payment to the movant of "part or all of the reasonable attorney's fees and other expenses directly resulting from the violation."  Fed. R. Civ. P. 11(c).

The goal of Rule 11 is the "correction of litigation abuse." *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 483 (3d Cir. 1987).  "[S]anctions awarding counsel fees do not automatically or usually follow an adverse judgment or ruling.  Substantially more is required." *Id.*  Generally, sanctions are warranted "only in the 'exceptional circumstance' where a claim or motion is patently unmeritorious or frivolous." *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.3d 277, 289 (3d Cir. 1991) (citing *Doering v. Union Cnty. Bd. Of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988).  As indicated by the Rule, a court must look to whether an attorney's or party's representations to the court were reasonable under the circumstances. *Bus. Guides v. Chromatic Commc'ns Ent.*, 498 U.S. 533, 551 (1991).  "The wisdom of hindsight is to be avoided; the attorney's conduct

24

must be judged by what was reasonable to believe at the time the pleading, motion, or other paper was submitted." *Schering Corp. v. Vitarine Pharm., Inc.*, 889 F.2d 490, 496 (3d Cir. 1989). "When the attorney reasonably relies upon the misrepresentations of a client, the client not the attorney should be sanctioned under Rule 11." *Horizon Unlimited, Inc. v. Richard Silva & SNA, Inc.*, No. CIV. A. 97-7430, 1999 WL 675469, at *4 (E.D. Pa. Aug. 31, 1999). "Counsel is permitted to assume his client is honest with him unless and until circumstantial evidence is obviously to the contrary." *Id.* at *6.

Officer Defendants argue that Plaintiffs and Mr. Melletz initiated this litigation under the theory that police had planted evidence when Mr. Thomas's own confession tape conceded the presence of over 10 marijuana plants in Plaintiffs' residence. Further, Officer Defendants state that Mr. Melletz continued to pursue the litigation, first on behalf of both Plaintiffs and now on behalf of Katherine Thomas, despite being provided with evidence that his clients' claims were frivolous. Specifically, Mr. Melletz had received copies of reports authored by Officer Defendants, which detail the items found in Plaintiffs' home, Mr. Thomas's admission to the presence of more than 10 marijuana plants during his confession, and Mr. Thomas's admission to the presence of marijuana growing literature during his deposition.

While the Court agrees that the evidence supporting probable cause to charge both Plaintiffs – evidence to which Mr. Melletz had access as the case progressed – was strong, the Court will not grant Officer Defendants' motion for sanctions against either Mr. Melletz or Plaintiffs in this case.  The Court does not find this to be the exceptional case that warrants such a penalty.

## IV.  Conclusion

For the reasons set forth above, the Court will **GRANT** Officer Defendants' motion for summary judgment, but **DENY** Officer Defendants' motion for sanctions.  The Court will also **GRANT** Municipal Defendants' motions for summary judgment as to Plaintiffs' municipal liability claims.  An appropriate Order accompanies this Opinion.


Date: August 12, 2015

                                    s/ Joseph E. Irenas
                              **JOSEPH E. IRENAS, S.U.S.D.J.**